[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff, Ravenswood Development Corp. seeks a temporary injunction against the Town of Newington to prevent the condemnation of certain premises known as the "Young Farm", in which it is the prospective buyer under an Agreement for Sale. Trial before this court took place on September 28, 1998, with briefs and offers of proof being filed through October 16, 1998.
On August 22, 1996, Plaintiff signed an Agreement with the Estate of Fred J. Young to purchase the premises containing 53.86 acres as shown on a recorded map. Plaintiff made a deposit of $5,000, with an additional deposit of $45,000 to be made upon approval by the Newington Probate Court. The Agreement contained many zoning, utility and environmental contingencies, provided for acquisition of approved lots in three phases, and a total purchase price of $1,957,500. Before the additional deposit of $45,000 was made, on September 19, 1996, an appeal was taken from the Probate Court approval of the sale by one of the estate beneficiaries, and on November 21, 1996, an Addendum to the Agreement of August 22, 1996 was finalized, extending the Agreement to sixty days beyond the final determination of the appeal and giving the buyer virtually unrestricted discretion to terminate the Agreement at anytime. On July 9, 1998 Defendant Town filed a notice and statement of compensation for the premises and on July 30, 1998 served the Seller and Buyer with a notice of condemnation. Thereafter, Defendant served on the parties an amended notice and statement of compensation dated July 27, 1998 and subsequently filed its return of service with the court.
In seeking to enjoin the Town from proceeding with the condemnation, Plaintiff claims that the Town (1) failed to wait twelve days before filing its return of service in the Condemnation action as required by General Statutes § 8-129, (2) failed to negotiate with the Plaintiff prior to instituting its condemnation action as required by General Statutes §48-6, (3) condemned the property for open space even though the property was not so designated on its plan of development as required by General Statutes § 7-131b, and (4) undertook the condemnation in bad faith for the primary purpose of halting the residential subdivision outlined in the Agreement of August 22, 1996.
 — I — CT Page 15202
At oral argument and in briefs Plaintiff argued that the Town in condemning the property failed to follow the procedure set forth in General Statutes § 8-129 because it failed to wait twelve days before filing the return of service. The significance of the twelve day rule is to establish a decent period of time before the property vests in the condemning municipality, which vesting occurs when the certificate of taking issued by the Superior Court is filed with the Town Clerk. The evidence in this case is not conclusive that the return of service was filed within eleven days as claimed by the plaintiff, or within the twelve day period. Even if the return of service was filed before twelve days after the notice and statement of compensation, the clerk of the Superior Court would have to wait twelve days before issuing the certificate of taking. This claim of premature filing does not appear in the complaint and does not warrant serious consideration in this injunction action.
 — II —
Plaintiff further claims that the Town failed to negotiate with the Plaintiff prior to instituting its condemnation action as required by General Statutes § 48-6. That statute provides that a municipal corporation can proceed to take land in the manner provided by § 48-12 "if such municipal corporation cannot agree with any owner upon the amount to be paid for any real property thus taken." In Darien v. Kavookjian,151 Conn. 659 (1964) our Supreme Court stated: "Thus inability to agree with the owner of property sought to be condemned is a condition precedent to condemnation under the statute." In that case, however, the Court found that expressed views by the joint owners indicting an opposition to the acquisition of the property was "tantamount to a refusal to negotiate or sell out any price and show that the statutory requirement of inability to agree had been met."
There was evidence presented at trial, including testimony by Richard Fiske, president of Plaintiff that he first heard of the Town's interest in the property in April, 1998 and on June 15, 1998 he, accompanied by his attorney met with the Town Attorney, Peter Boorman to discuss the Town's interest in acquiring Young's farm, at which Plaintiff made a settlement demand of $500,000 for the Town to acquire its interest under the agreement.
On July 13, 1998, Defendant's Town Attorney wrote to Robert Young, Executor of the Young Estate offering to purchase the CT Page 15203 parcel for $1,400,000, with a response requested by July 21, 1998. A copy of this offer was sent to Plaintiff's attorney. An amended notice of condemnation was filed on July 27, 1998. There was further evidence that because of the pending litigation between various heirs of the Young estate, there was no inclination on the part of the executor to negotiate the Town's acquisition of the estate interest in the land short of a condemnation procedure. It cannot be said, under these circumstances that Plaintiff has proven the failure of Defendant to negotiate with the landowners as a precedent condition under § 48-12.
 — II —
Plaintiff claims that the property was not designated for open space on the Town's plan of development as required by General Statutes § 7-131b, and therefore this condemnation action is improper.
§ 7-131(b) reads as follows:
 (a) Any municipality may, by vote of its legislative body, by purchase, condemnation, gift, devise, lease or otherwise, acquire any land in any area designated as an area of open space land on any plan of development of a municipality adopted by its planning commission or any easements, interest or rights therein and enter into covenants and agreements with owners of such open space land or interests therein to maintain, improve, protect, limit the future use of or otherwise conserve such open space land.
Retention of open space is generally recognized as a legitimate zoning and planning objective. Tondro Connecticut Land Use and Regulation 2nd Ed. p. 347 preservation of open space has become a state concern. Tondro, ibid p. 1.
Plaintiff claims that the 1995-2005 Plan of Conservation and Development of the Town of Newington. (Plaintiff's Exhibit 9, "1995 Plan" fails to show that the Young's farm was designated as an "area designated as open space."
As far back as the 1971 Plan of Development (Defendant's Exhibit F) the Young's farm is shown as being adjacent to and southerly of public schools, and bearing designations of P in a CT Page 15204 serrated circle which indicates a proposed recreation area with an arrow indicating it is proposed as an expansion of the school facility. Other markings on the premises on that plan indicate it is an area of streambelt preservation. There was no specific designation on this plan for open space development for any Town property.
In the 1984 Plan of Development, Meehan testified the Young Farm was earmarked for a proposal recreation area, with a "potential for play fields", considering the closeness of the schools.
In the 1995 plan, there are various references to the premises:
On page 23 the premises are crisscrossed by parallel green bar lines labeled "greenway corridor; wetlands; flood hazard lands" and by green wavy lines designated as "open space linkage opportunities." Another designation in the plan index shown by alternate blue and white triangles entitled "291 parcels, open space areas" is not marked on the subject parcel, although other parcels are so marked.
Plaintiff claims that failure to designate the subject premises with the blue and white triangles or a specific "open space" designation when other parcels, such as the Eddy farm were so designated, show that the parcel was not designated as "open space" within the meaning of the statute.
There is a definition of "open space land" in General Statutes § 7-131c, which refers to any land acquired under the provisions of §§ 7-131c to 7-131k inclusive . This would include any of the uses set forth in § 7-131c(a) which defines "recreational and conservation purposes" as use of lands for agriculture, parks, natural areas, forests, camping, fishing, wetlands preservations, etc.
Within this broad definition, the terms "greenway corridor, and wetlands would seem to qualify for open space, quite aside from the specific reference to `open space' linkage opportunities." In a tax appeal case our Supreme Court held that a Planning Commission was not required to apply the specific label "open space land" to an area which it designated for preservation as open space. Rolling Hills Country Club v. BoardTax Review, 168 Conn. 466 (1975). CT Page 15205
Page 31 of the 1995 plan states: "The largest vacant parcels in private ownership are the Eddy, Young and Peckman farms."
Edmund Meehan, Town planner, testified to all the above references in the 1995 plan and stated further that the Young Farm had been considered for open space acquisition as early as 1971. After the 1995 plan was issued with the clear marking of open space on the Eddy farm, he explained that the owners of the Eddy farm had placed the premises in a trust assuring its preservation as open space. Between February 11, 1997 and May 20, 1998 at least ten meetings were held by the Town's Open Space Committee to examine potential properties to be preserved as open space and by September, 1997, Young's farm was identified as a high priority property to be preserved as open space. On November 25, 1997, based on the Committee recommendation, the Town Council voted to seek a State grant to acquire Young's farm and in December a grant application was filed with the State Department of Environmental Protection. Meehan testified further that on June 10, 1998 the State granted this application in part, finding that the Town's acquisition of Young's farm for open space was in conformity with the 1995 plan.
On July 7, 1998 the Newington Town Council unanimously approved the proposals to acquire the premises for the purpose of preserving open space.
Under all the circumstances, it is concluded that there was sufficient designation of the subject premises as "open space" to meet the requirement of General Statutes § 7-131b.
 — IV —
Finally, Plaintiff has failed to prove that the Town undertook the condemnation in bad faith for the primary purpose of halting the residential subdivision prepared by the Plaintiff.
The Young property had been considered for open space at least as far back as the 1971 Plan of Development. In March 1974, the Newington Town Crier, a local newspaper, reported the reaction of Fred Young to "designs" of the Town to acquire his farm for a park. The notations on the 1995 plan gave the public ample notice that the premises were being considered for a greenway corridor and open space linkage. The minutes of the Open Space Committee in 1997, and the report of its chairman, Joseph CT Page 15206 Klett, to the Newington Town Courine, dated May 22, 1997, demonstrate genuine concern for the identification, funding and acquisition of open space parcels in a town approximately "85% developed." The May 22, 1997 report recommends that the Town move quickly to protect "the remaining large tracts of undeveloped land," based on the "Environmental and Open Space Component recommendation" of the 1995 Plan.
Plaintiff claims that the premises are not excluded for residential development in the 1995 Plan and several lots bordering Church Street had been previously approved for residential development. This claim, by itself, does not challenge or cast doubt on the good faith of the Town Planning and Zoning Commission or the Town Council in its action to condemn the premises for open space. See Burnham v. Planning andZoning Commission, 189 Conn. 261, 265 (1983). Of course, the existence of any approved residential lots will be reflected in the price required to be paid by the Town in the condemnation proceeding.
 — V —
In view of the above conclusions, it is unnecessary to discuss the threshold issues required to be proven in any injunction proceedings: the claim of irreparable damage to the Plaintiff, the lack of an adequate remedy, and the reasonable probability of prevailing in the litigation. It is noted however that despite lengthy testimony by Plaintiff of the time spent in locating the premises and negotiating the contract, the deleterious effect on his building schedule and organization maintenance, and lost building opportunities, any damages suffered by Plaintiff are mostly reducible to monetary compensation readily recoverable at law. Those which are not are not at all certain to occur, considering all the contingencies in the contract. Moreover, plaintiff's prospects of prevailing on the ultimate issues raised in this case are not reasonably certain.
Application for Temporary Injunction denied.
Jerry Wagner Judge Trial Referee CT Page 15207